UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
J & J SPORTS PRODUCTIONS INC.,

                Plaintiff,

        - against -

SALVADOR JUAN INGA, individually and
d/b/a SL Lounge; ROSA INGA, individually
and d/b/a SL Lounge; SABOR LATINO
LOUNGE, INC., an unknown business entity
d/b/a SL Lounge; and SABOR LATINO
CORP., an unknown business entity d/b/a SL
Lounge,

                Defendants.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-2542 (PKC) (RLM)

PAMELA K. CHEN, United States District Judge:

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") brought this action alleging that Defendants Salvador Juan Inga d/b/a SL Lounge and Rosa Inga d/b/a SL Lounge (collectively, "Individual Defendants"), as well as Defendants Sabor Latino Lounge, Inc. d/b/a SL Lounge and Sabor Latino Corp. d/b/a SL Lounge (collectively, "Institutional Defendants"), violated Plaintiff's rights as the exclusive commercial domestic distributor of a telecast entitled *"The Fight of the Century" Floyd Mayweather, Jr. v Manny Pacquiao WBA World Welterweight Championship Fight Program* (the "Program") under 47 U.S.C. §§ 605 and 553. (*See generally* Complaint ("Compl."), Dkt. 1.)[1] Plaintiff now moves for default judgment, statutory damages, and full

---

[1] Plaintiff references "the state law claims" in the portion of its complaint establishing jurisdiction (Compl. ¶ 2), but does not specifically identify any causes of action arising under state law in the portion of the complaint detailing the factual allegations supporting each claim (*id.* ¶¶ 15–29). "Because plaintiff had the assistance of an attorney in preparing the complaint, the Court will not liberally construe" it as alleging state law claims. *Atencio v. U.S. Postal Serv.*, No. 14-CV-7929, 2015 WL 7308664, at *8 (S.D.N.Y. Nov. 19, 2015).

1

costs including reasonably attorneys' fees. (Dkt. 13.) For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

On April 30, 2018, Plaintiff filed a complaint seeking damages against Defendants. (*See generally* Compl., Dkt. 1)[2] Pursuant to contract, Plaintiff was granted exclusive nationwide commercial distribution rights to the Program, which was telecasted nationwide on May 2, 2015. (*Id.* ¶ 16.) Plaintiff entered into subsequent sublicensing agreements with various commercial entities throughout North America, including New York, by which Plaintiff granted these entities limited sublicensing rights to publicly exhibit the Program within their respective commercial establishments in the hospitality industry, such as hotels, racetracks, casinos, bars, taverns, restaurants, and social clubs. (*Id.* ¶ 17.) Individual Defendants Salvador Juan Inga and Rosa Inga are officers, directors, shareholders, and/or principals of Institutional Defendants Sabor Latino Corp. and Sabor Latino Lounge, Inc., which operate a commercial establishment called "SL Lounge" located in Elmhurst, New York. (*Id.* ¶¶ 7–8, 14 (Institutional Defendants "are owners, and/or operators, and/or licensees, and/or permitees, and/or persons in charge, and/or individuals with dominion, control, oversight[,] and management of" SL Lounge).)

Although Defendants were never granted sublicensing rights, they nonetheless displayed the Program at SL Lounge on May 2, 2015, resulting in increased profits. (*Id.* ¶¶ 13, 19.) According to Plaintiff, Defendants were able to display the Program through unlawful interception techniques. (*Id.* ¶¶ 10–11.) As Plaintiff summarizes, "[w]ith full knowledge that the Program was

---

[2] The Court accepts all well-pleaded factual allegations in the complaint—except those relating to damages—as true, summarizing them here where relevant. *See Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200, 204 (E.D.N.Y. 2009) ("[W]hen the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (quotation omitted)).

2

not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, [] Defendants, either through direct action or through actions of employees or agents directly imputable to Defendants," did "unlawfully intercept, receive, publish, divulge, display, and/or exhibit the Program at the time of its transmission at" SL Lounge. (*Id.* ¶ 19 (italics omitted).)

To date, Defendants have failed to appear, plead, or otherwise respond to the complaint. The applicable time limit for answering or otherwise responding to the complaint has expired, and the Clerk's Certificate of Default was entered on June 14, 2018. (Dkt. 12.) Plaintiff filed a motion for default judgment on August 30, 2018. (Plaintiff's Motion for Default Judgment ("Pl.'s Mot. for Default J."), Dkt. 13.) Plaintiff also filed a Declaration of Service confirming that a true and correct copy of its motion for default judgment, along with the appended exhibit, memorandum of law, affidavit from investigator Gary Joseph, and proposed judgment had been served on Defendants via certified mail on August 30, 2018. (Pl.'s Mot. for Default J., at ECF[3] 50, 62, 81, 122.) To date, Defendants have failed to file a response to Plaintiff's motion for default judgment.

## DISCUSSION

### I. Standard of Review

Under Fed. R. Civ. P. 55(a), the procedure for default judgment against a party who "fails to plead or otherwise defend" in a matter includes two steps: "first, the entry of a default, and second, the entry of a default judgment." *City of N.Y. v. Mickalis Pawn Shop*, 645 F.3d 114, 128 (2d Cir. 2011) (quotation omitted). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the

---

[3] "ECF" refers to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

plaintiff." *Id.* "[A] party's default is deemed to constitute a concession of all well[-]pleaded allegations of liability." *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006) (quotation omitted).

"The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the Court decides it is entitled, to the extent permitted by [Fed. R. Civ. P.] 54(c)."[4] *Mickalis*, 645 F.3d at 128. "[T]he decision to grant a motion for a default judgment lies in the sound discretion of the trial court." *O'Callaghan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007). Default judgments "track[] the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). However, "it is also true that a district court need not agree that the alleged facts constitute a valid cause of action," *Mickalis*, 645 F.3d at 128 (quotation omitted), and the Court is therefore "required to determine whether [Plaintiff's] allegations establish [Defendants'] liability as a matter of law," *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

## II. Liability

Plaintiff brings claims against Defendants under § 605 and § 553 of the Federal Communications Act of 1934 ("FCA"). Section 605 of the FCA provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). In the Second Circuit, courts have applied § 605 to theft of

---

[4] Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).

4

cable communications that were originally radio or satellite communications. *Cmty. Television Sys. Inc. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002). Section 553 of the FCA provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

Where, as here, a plaintiff brings claims under both § 605 and § 553 based on the same set of facts, "the law in this Circuit is clear that [the] plaintiff may recover under only one of those statutes." *Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 114 (E.D.N.Y. 2011); *see Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 129 (2d Cir. 1996) (concluding that, where defendant was liable under both §§ 605 and 553, remand was required "for the imposition of damages under § 605(e) instead of the lesser damages available under § 553" (quotation and ellipsis omitted)); *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *3 (E.D.N.Y. Sept. 28, 2007) ("A plaintiff cannot recover under both 47 U.S.C. § 605 and § 553." (quotation and brackets omitted)); *Kingvision Pay-Per-View Ltd. v. Autar*, 426 F. Supp. 2d 59, 62 (E.D.N.Y. 2006) ("Although defendants have admitted liability under both § 605 and § 553, plaintiff can recover under only one statute." (quotation omitted)). For this reason, Plaintiff's request for damages under both statutes (Compl., Dkt. 1, ¶¶ 24, 29) must be rejected. The Court will presume that Plaintiff elects to recover damages under § 605 because it provides for more severe penalties than § 553. *See Kingvision*, 426 F. Supp. 2d at 62 ("Since § 605(e) provides 'far more severe penalties than those of § 553(c),' plaintiff has elected to pursue remedies under § 605(e)." (quoting *Sykes*, 997 F.2d at 1007)).

5

### A. Institutional Defendants

Plaintiff alleges that both Institutional Defendants Sabor Latino Lounge, Inc. d/b/a SL Lounge and Sabor Latino Corp. d/b/a SL Lounge "are owners, and/or operators, and/or licensees, and/or permitees, and/or persons in charge, and/or individuals with dominion, control, oversight[,] and management of" SL Lounge. (*Id.* ¶ 14.) The Court has taken judicial notice of two entries in New York State's Department of State Corporation and Business Entity Database relating to this issue. *See Saudi v. Marine Atl., Ltd.*, No. 02-CV-2495, 2005 WL 8156849, at *4 (E.D.N.Y. July 1, 2005) (taking judicial notice that entity "is a Delaware corporation, and is listed as such on the New York Department of State Corporation and Business Entity Database"). The first entry lists "Sabor Latino Lounge, Inc." as a domestic business corporation located in Queens, New York[5] that first filed documents with the Department of State on May 29, 2012.[6] The second entry lists "SL Lounge Corp." as a domestic business corporation located in Queens, New York that first filed documents with the Department of State in February 14, 2013.[7] Based on the foregoing, the Court is persuaded that Institutional Defendants are the owners of SL Lounge.

The Court finds that Plaintiff's well-pleaded allegations state a valid claim against Institutional Defendants under § 605(a) of the FCA. Plaintiff held an exclusive license to sublicense and broadcast the Program. (Compl. ¶ 16; Affidavit of Joseph M. Gagliardi ("Gagliardi Aff."), Dkt. 13-2, ¶ 3; ECF 71–77 (copy of licensing agreement affixed as exhibit).)

---

[5] Elmhurst, which, according to the complaint, is where the SL Lounge is located, is in Queens, New York. *Medisys Health Network, Inc. v. Local 348-S*, No. 02-CV-3374, 2002 WL 2003194, at *1 (E.D.N.Y. Aug. 28, 2002).

[6] *See* Corporation and Business Database, New York Department of State, Division of Corporations, https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_SEARCH_ENTRY (search "Sabor Latino Lounge, Inc.") (current as of Mar. 13, 2019).

[7] *See id.* (search "SL Lounge Corp.") (current as of Mar. 13, 2019).

The only way Institutional Defendants could have broadcast the transmission without violating § 605(a) would have been to contract with Plaintiff through a sublicensing agreement. (Compl., Dkt. 1, ¶ 17; Gagliardi Aff., Dkt. 13-2, ¶¶ 3, 8; ECF 72). Despite failing to contract with Plaintiff, Institutional Defendants screened the event at SL Lounge on May 2, 2015. (Compl., Dkt. 1, ¶¶ 9–14; Affidavit of Gary Joseph ("Joseph Aff."), Dkt. 13-4, at ECF 108–09.)[8] In this Circuit, courts have repeatedly found that such allegations are sufficient to establish liability under § 605(a). *See, e.g.*, *J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, No. 15-CV-6505, 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016); *J & J Sports Prods., Inc. v. McAdam*, No. 14-CV-5461, 2015 WL 8483362, at *3 (E.D.N.Y. Dec. 9, 2015); *J & J Sports Prods., Inc. v. 1400 Forest Ave. Rest.*, No. 13-CV-04299, 2014 WL 4467774, at *6 (E.D.N.Y. Sept. 9, 2014); *J & J Sports Prods., Inc. v. Tellez*, No. 11-CV-1240559, 2011 WL 6371521, at *3 (E.D.N.Y. Dec. 20, 2011).

The Court therefore grants Plaintiff's motion for default judgment as to Institutional Defendants Sabor Latino Corp. and Sabor Latino Lounge, Inc.

### B. Individual Defendants

Plaintiff also seeks to hold Individual Defendants Salvador Juan Inga and Rosa Inga individually liable. Where, as here, a plaintiff successfully alleges that owners of a

---

[8] The affidavit of investigator Gary Joseph described the program that he viewed at the SL Lounge on May 2, 2015 between 10:10 p.m. and 10:20 p.m. as follows: "At the time I was inside [SL Lounge], I observed the following program on the above televisions: HBO/SHOWTIME PPV EVENT, SANTA CRUZ (BLUE TRUNKS) VS. CAYETANO (BLACK TRUNKS), 2:03 OF THE 1ST ROUND (names of fighters or commentators, trunk colors of each fighter/attire of commentators, time remaining in round)." (Joseph Aff., Dkt. 13-4, at ECF 108.) Based on documents submitted by Plaintiff, the Court concludes that Mr. Joseph viewed a fight between Leo Santa Cruz and Jose Cayetano—which preceded the marquee fight between the Program's headliners—that was aired as part of the Program to which Plaintiff held exclusive rights. (*See* Gagliardi Aff., Dkt. 13-2, Exhibit ("Ex.") 2, at ECF 78.)

commercial establishment have violated § 605, then the plaintiff "may seek to impose liability on the [individual owner-defendants] under the theories of 'contributory infringement' or 'vicarious liability.'" *LX Food Grocery*, 2016 WL 6905946, at \*2 (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997). "Contributory infringement occurs when a defendant authorized the violations." *Id.* (citing *Softel*, 118 F.3d at 971). A defendant may be held vicariously liable so long as she had a "right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials.'" *Softel*, 118 F.3d at 971 (quotation and brackets omitted).

Plaintiff's complaint suggests that it seeks to hold Individual Defendants liable on theories of both contributory infringement and vicarious liability. Plaintiff alleges that "Salvador Juan Inga is an individual identified as a[n] 'Officer, Director, Shareholder and/or Principal' of Sabor Latino Corp., which operates the commercial establishment doing business as SL Lounge" in Elmhurst, New York. (Compl., Dkt. 1, ¶ 7.) Additionally, Plaintiff alleges that "Rosa Inga is an individual identified as a[n] 'Officer, Director, Shareholder and/or Principal' of Sabor Latino Lounge, Inc., which operates" SL Lounge. (*Id.* ¶ 8.) With regard to the violations of law, Plaintiff makes the following allegations in its complaint:

> 9. . . . [O]n Saturday, May 2, 2015[,] . . . Defendants Salvador Juan Inga and Rosa Inga had the right and ability to supervise the activities of Sabor Latino Corp. and Sabor Latino Lounge, Inc. which included the unlawful interception of Plaintiff's *Program*.
>
> 10. . . . [O]n Saturday, May 2, 2015[,] . . . [Defendants] Salvador Juan Inga and Rosa Inga as the individuals specifically identified as [] 'Officer[s], Director[s], Shareholder[s] and/or Principal[s] of Sabor Latino Corp. and Sabor Latino Lounge, Inc. had the obligation to supervise the activities of SL Lounge, which included the unlawful interception of Plaintiff's *Program*, and, among other responsibilities, had the obligation to ensure that the liquor license was not used in violation of law.
>
> 11. . . . [O]n Saturday, May 2, 2015[,] . . . [Defendants] Salvador Juan Inga and Rosa Inga specifically directed or permitted the employees of SL Lounge to unlawfully intercept and broadcast Plaintiff's *Program* at SL Lounge or

8

intentionally intercepted, and/or published the *Program* at SL Lounge themselves. The actions of the employees of SL Lounge are directly imputable to Defendants Salvador Juan Inga and Rosa Inga by virtue of their acknowledged responsibility for the operation of SL Lounge.

12. . . . [O]n Saturday, May 2, 2015, Defendants Salvador Juan Inga and Rosa Inga as the 'Officer[s], Director[s], Shareholder[s] and/or Principal[s]' of Sabor Latino Corp. and Sabor Latino Lounge, Inc., had an obvious and direct financial interest in the activities of SL Lounge, which included the unlawful interception of Plaintiff's *Program*.

13. . . . [T]he unlawful broadcast of Plaintiff's *Program*, as supervised and/or authorized by Defendants Salvador Juan Inga and Rosa Inga, resulted in increased profits for SL Lounge.

(*Id.* ¶¶ 9–13 (emphases in original).)

The Court holds that these allegations are insufficient to support liability for Individual Defendants under either contributory infringement or vicarious liability.[9] At the outset, the Court notes that Plaintiff has not submitted any evidence indicating that Defendant Salvador Juan Inga is, in fact, a director or officer of Sabor Latino Corp. or that Defendant Rosa Inga is, in fact, a director or officer of Sabor Latino Lounge, Inc.[10] Even if the Court accepts that these two Individual Defendants are directors and officers of Institutional Defendants, the Court does not accept as true the allegations in the complaint regarding Individual Defendants Salvador Juan Inga and Rosa Inga that constitute legal conclusions, such as the allegation that both Individual Defendants "had the right and ability to supervise the activities of Sabor Latino Corp. and Sabor

---

[9] Because Plaintiff did not explicitly mention contributory infringement or vicarious liability in its Memorandum of Law in Support of Default Judgment, Dkt. 13-1, the Court relies on the complaint as stating the entirety of Plaintiff's arguments as to the liability of Individual Defendants.

[10] It appears that Plaintiff is correct as to Defendant Rosa Inga, only. The entries for Institutional Defendants in the New York State Division of Corporations Database, of which the Court has explained it takes judicial notice, *supra*, indicates that process may be served on SL Lounge Corp. by mailing to "GUSMORINO & MARX" and that process may be served on Sabor Latino Lounge, Inc. by mailing to "ROSA INGA."

9

Latino Lounge, Inc. which included the unlawful interception." (Compl., Dkt. 1, ¶ 9.) *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (quotations, citation, and brackets omitted)); *United States v. Thomas*, No. 18-CV-1104, 2019 WL 121678, at *4 (E.D.N.Y. Jan. 7, 2019) (noting that, on a motion for default judgment, "a pleading's legal conclusions are not assumed to be true" and "the factual allegations in the complaint must themselves be sufficient to establish a right to relief" (quotations omitted)); *LX Food Grocery*, 2016 WL 6905946, at *3 (holding that individual defendants were not vicariously liable under § 605 where Plaintiff conclusorily alleged that "both Individual Defendants 'had a right and ability to supervise the infringing activities . . . on the night the [event or program] was shown at Defendant's Establishment,' and that they 'had an obvious and direct financial interest in the exploitation of the copyrighted materials'").

The Court therefore denies Plaintiff's motion for default judgment as to Individual Defendants Salvador Juan Inga and Rosa Inga.

### III. Damages

Because Plaintiff has established liability as to Institutional Defendants, Plaintiff is entitled to damages. On a motion for default judgment, the Court will not accept as true Plaintiff's factual allegations related to damages. *LX Food Grocery*, 2016 WL 6905946, at *2 (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). "The Court must be satisfied that Plaintiff has met the burden of proving damages to the court with 'reasonable certainty.'" *Id.* (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "Although requests for damages are usually established by the plaintiff in an evidentiary hearing, the court

can make such a determination without a hearing when supported by sufficiently detailed affidavits and documentary evidence." *Id.* (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 19997)).

In Plaintiff's complaint, Plaintiff alleges that it is entitled to the following from each Institutional Defendant for their respective violations of § 605: (1) statutory damages in an amount of $10,000; (2) statutory damages for each willful violation in an amount of $100,000; and (3) the recovery of full costs, including reasonable attorneys' fees. (Compl., Dkt. 1, ¶ 24.) In Plaintiff's motion for default judgment, however, Plaintiff indicates that it is requesting $9,000 in statutory damages, $27,000 in enhanced statutory damages, as well as pre- and post-judgment interest at the federal statutory rate. (Pl.'s Mot. for Default J., Dkt. 13, at ECF 55.)

### A. Statutory Damages

Section 605 of the FCA provides for a per-violation recovery "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(c)(i)(II). "The amount of damages to be assessed pursuant to Section 605 rests within the sound discretion of the Court." *Time Warner Cable of N.Y.C. v. Sanchez*, No. 02-CV-5855, 2003 WL 21744089, at *3 (S.D.N.Y. July 8, 2003). The Court finds that Plaintiff is entitled to $3,000 in statutory damages.

> Courts in this jurisdiction typically utilize two methodologies to calculate damages under Section 605(e)(C)(i)(II), and base the damages award on the higher of the two totals. Under the 'flat fee' method, the court calculates the amount that defendants would have paid in exchange for the right to show the [event or program] legally—in this case, Plaintiff's licensing fee. Under the 'per-person' method, damages are equal to the amount an individual consumer would have paid to view the [event or program] pay-per-view multiplied by the number of consumers who watched the illegally transmitted [event or program].

*LX Food Grocery*, 2016 WL 6905946, at *4 (citations omitted).

The Court determines that Plaintiff is entitled to $3,000 in statutory damages under the "flat fee" method, for which Institutional Defendants will be joint and severally liable.[11] Plaintiff submitted a "rate card" that, according to Plaintiff, establishes that SL Lounge would have been charged a licensing fee of $3,000 to broadcast the Program.[12] The Court declines to award Plaintiff the $9,000 it requests—three times the licensing fee—and observes that Plaintiff's legal arguments in support of such an award rely almost entirely on district court decisions outside this Circuit. *Cf. L.S. v. Webloyalty.com, Inc.*, No. 10-CV-1372, 2014 WL 3547640, at *5 (D. Conn. July 17, 2014) (noting that the district court is "not bound by the decisions of any other district court in the nation, nor by the decisions of any circuit court other than the Second").

B.  **Enhanced Damages**

"In any case in which the court finds that [an FCA violation] was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000." Plaintiff requests $27,000 in enhanced damages. (Mem. of Law in Supp. of Default J., Dkt. 13, at ECF 49.) The Court declines to do so.

> To determine whether willful conduct warrants an award of enhanced damages, courts typically consider, *inter alia*, whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial

---

[11] Plaintiff has not presented the Court with sufficient evidence to determine what a damages award would be under the "per-person" method.

[12] The Court notes that Gary Joseph's affidavit indicates that SL Lounge had a capacity of 150 people, which would appear to suggest, based on the rate card submitted by Plaintiff, that the licensing fee for SL Lounge to broadcast the Program would be $6,000. (*See* Gagliardi Aff., Dkt. 13-2, Ex. 2., at ECF 80; Joseph Aff., Dkt. 13-4, at ECF 109 (noting that the capacity of SL Lounge was approximately 150 people and that ten patrons were counted in the establishment at the time the violation occurred).) However, according to Plaintiff's President, Joseph M. Gagliardi (Gagliardi Aff., Dkt. 13-2, ¶ 1), the licensing fee SL Lounge would have been charged is $3,000. (*See* Pl.'s Mot. for Default J., Dkt. 13, at ECF 58; Gagliardi Aff., Dkt. 13-2, ¶ 8.) The Court therefore adopts Plaintiff's own figure.

unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks.

*J & J Sports Prods., Inc. v. Big Daddy's Theme Palace*, No. 14-CV-2765, 2015 WL 58606, at *3 (E.D.N.Y. Jan. 5, 2015) (quotation omitted).

Plaintiff has not alleged facts or presented sufficient evidence to support a finding of willfulness based on any of these factors. First, there is no evidence of repeat violations. Second, "[t]o the extent Defendants' failure to pay for a license constitutes 'actual damages,' that cost is already factored into Plaintiff's statutory damages award." *LX Food Grocery*, 2016 WL 36905946, at *5. Third, the evidence submitted by Plaintiff indicates that there were approximately ten patrons in SL Lounge when the violation occurred, which—multiplied by the $20 cover charge—would yield a profit of $200, a sum the Court does not find to be a substantial unlawful monetary gain. Fourth, Plaintiff presents no proof that SL Lounge advertised its airing of the Program. Finally, although Plaintiff has provided evidence that Institutional Defendants collected a cover charge of $20 per customer (Joseph Aff., Dkt. 13-4, at ECF 108), Plaintiff has provided no evidence that this cover charge reflected Institutional Defendants' wish to profit more than usual due to the unlawful airing of the Program.

Accordingly, the Court does not find that enhanced damages are warranted in this case. *See J & J Sports Prod., Inc. v. El Ojo Aqua Corp.*, No. 13-CV-6173, 2014 WL 4700014, at *6 (E.D.N.Y. Aug. 29, 2014) ("An affirmative act can be done in good faith or bad, and the FCA explicitly recognizes that some violations—which necessarily follow an affirmative action to obtain an unauthorized broadcast—may be the result of an innocent mistake.").

## IV. Costs and Interest

The FCA requires courts to "direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails." 48 U.S.C. § 605(e)(3)(B)(iii).

Although Plaintiff indicates that it requests attorney's fees (Compl., Dkt. 1, ¶ 24), it does not identify a specific monetary figure. The Court grants Plaintiff leave to submit an affidavit and accompanying letter establishing the amount of attorney's fees it seeks to recover within thirty (30) days from the entry of this Memorandum and Order.

Additionally, Plaintiff requests pre- and post-judgment interest at the federal statutory rate. (Pl.'s Mot. for Default J., Dkt. 13, at ECF 49.) Although § 605 of the FCA does not provide for an award of pre-judgment interest, the Court has discretion to award pre-judgment interest when doing so is "fair, equitable[,] and necessary to compensate the wronged party fully." *Wickham Contracting Co. v. Local Union No. 3, IBEW*, 955 F.2d 831, 835 (2d Cir. 1991). However, "[c]ourts should not award pre[-]judgment interest where the statutory obligation on which interest sought is punitive in nature." *LX Food Grocery*, 2016 WL 6905946, at *5 (quotation omitted). As that is the basis on which Plaintiff seeks enhanced damages (Pl.'s Mot. for Default J., Dkt. 13, at ECF 59–60), the Court denies Plaintiff's request for pre-judgment interest. *See J & J Sports Prods., Inc. v. La Ruleta, Inc.*, No. 11-CV-4422, 2012 WL 3764062, at *5 (E.D.N.Y. Aug. 7, 2012) ("Most courts in this district that have addressed this issue have declined to award [pre-judgment] interest noting that '[s]tatutory damages under the [FCA] are analogous to punitive damages in that they are designed to deter others from similar infringing activity.'" (collecting cases)).

The Court, however, grants Plaintiff's request for post-judgment interest, as provided for by 28 U.S.C. § 1961.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is granted in part and denied in part. The motion is granted as to the liability of Defendants Sabor Latino Lounge, Inc.

and Sabor Latino Lounge Corp. under 47 U.S.C. § 605, and denied as to Defendants Salvador Juan Inga and Rosa Inga. The Court awards Plaintiff damages in the amount of $3,000, for which Defendants Sabor Latino Lounge, Inc. and Sabor Latino Lounge Corp. shall be joint and severally liable. The Court grants Plaintiff leave to submit an affidavit and accompanying letter establishing the amount of attorney's fees it seeks to recover within thirty (30) days from the entry of this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment in Plaintiff's favor. The Court orders Defendants Sabor Latino Lounge Corp. and Sabor Latino Lounge, Inc. to pay Plaintiff post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: March 22, 2019
      Brooklyn, New York